**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 17-21864-CIV-MOORE/SIMONTON**

WILSON A. NOLASCO,

        **Plaintiff,**

COMPLETE HIGHWAY IDENTITY,
et al.,

        **Defendants.**

_____/

**REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR ATTORNEYS' FEES**

        This matter is before the Court upon Defendants' Motion for Attorney Fees, ECF No. [26] and Plaintiff's Response and Counter-Motion for Attorney's Fees and Sanctions, ECF No. [32].  The Honorable K. Michael Moore, Chief United States District Judge, has referred the Motions to the undersigned Magistrate Judge, ECF No. [27], [34].  The Defendants have filed a response to the Plaintiff's Motion, ECF No. [36].  An evidentiary hearing was held before the undersigned on February 28, 2017, and March 28, 2017.  Based upon a thorough review of the entire record, the undersigned **RECOMMENDS** that the Motions be **DENIED** and that the parties are to bear their own fees and costs associated with the action.

**I.**    **BACKGROUND**

        This matter was initiated on May 18, 2017, when Plaintiff Wilson Nolasco ("the Plaintiff") filed a Complaint against Defendants Complete Highway Identity ("CHI") and Mirnesa Hasanovic alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., ("FLSA"), ECF No. [1].  On May 19, 2017, the Court entered an Order requiring the parties to conduct a settlement conference before the undersigned Magistrate Judge, ECF No. [5].  A settlement conference was scheduled for August 16, 2017, ECF No. [12].

        On June 1, 2017, the Plaintiff filed his Statement of Claim, which indicated that the

Plaintiff sought $4,887.00 in unpaid overtime wages and $5,240.00 in attorney's fees and

costs, ECF No. [7].

On June 13, 2017, the Defendants filed their Motion to Dismiss with Prejudice, ECF

No. [10]. In support of the Motion to Dismiss, the Defendants attached both a letter from

the Plaintiff and an affidavit from the Plaintiff. The Letter is signed by the Plaintiff, dated

May 22, 2017, and states the following:

> "To Whom It May Concern:
>
> I, Wilson A Nolasco, have been paid in full for all hours that I have worked
> for Complete Highway Identity, Inc. I agree that I will contact my attorney to
> stop the legal proceedings."

ECF No. [10-1]; Defendant's Exhibit 1.

The Affidavit is signed by the Plaintiff, dated June 8, 2017, and states, in relevant

part, the following:

> "I contacted Zandro Palmer on March 30, 2017 regarding my former
> employer Complete Highway Identity, Inc., they wanted to withhold my last
> pay check as I broke a new iPhone 7 that the company gave me. CHI paid
> me in the meantime for my last check and I was happy about that. My dad
> informed me that CHI was sued by Zandro Palmer's office, I contacted
> Zandro Palmer's office on 5/22/2017, I asked them why they are suing CHI
> and he stated that don't worry it's not going to cost you anything you will
> only get money if we win money, they even said to me that if I drop the
> case that the court will come after me. I never authorized for them to file a
> lawsuit. I signed a letter for CHI on 5/23/2017 that I have been paid in full
> and I am not owed any money. The attorney is refusing to drop the case
> and they have been harassing me to the point that I had to block their
> number, they asked me why I signed a letter for CHI and I told them that I
> am not owed any money from CHI. I told them it is wrong and I want for
> them to drop the case, they said that we can all make a little money on this
> case."

ECF No. [10-2]; Defendant's Exhibit 2.

Plaintiff's counsel, Mr. Zandro Palma, filed a Response to the Motion to Dismiss

on behalf of the Plaintiff on July 6, 2017, ECF No. [13]. Therein, Mr. Palma stated that the

Plaintiff had, "without involvement of his counsel and contrary to the undersigned's legal

advise" agreed to settle the matter with the Defendants and requested that the Court

conduct a fairness determination of the settlement or conduct an evidentiary hearing on the matter, ECF No. [13] at 1.

On July 14, 2017, the Defendants filed their Response to Statement of Claim, ECF No. [19]. Therein, the Defendants deny violation of the FLSA and refer the Court to the Letter and the Affidavit, stating that "Defendants dispute these allegations and from documents received from the Plaintiff by the Defendants, it seems that Plaintiff does as well." ECF No. [19] at ¶ 3.

On August 16, 2017, the Plaintiff failed to attend the Court-ordered settlement conference, ECF No. [21]. Plaintiff's counsel appeared for the settlement conference, and stated that he had notified the Plaintiff via text, email, and phone message of the scheduled settlement conference and of the requirement that he personally attend, but that the Plaintiff had not been in contact with his counsel since June 13, 2017, and that Plaintiff's counsel did not have the Plaintiff's authority to engage in settlement discussions, ECF No. [21]. Plaintiff's counsel further stated that he had no reason to believe the Plaintiff would attend the settlement conference if it was continued.

On August 17, 2017, the Court ordered the Plaintiff to show cause why the case should not be dismissed based on the Plaintiff's failure to appear at the settlement conference, ECF No. [23]. The Plaintiff failed to respond to the Order to Show Cause within the time period provided; and, on August 28, 2017, the Court dismissed the case based upon the Plaintiff's disregard of the Court's Order requiring his attendance at the settlement conference and the Order to Show Cause, ECF No. [25].

On September 6, 2017, the Defendants filed their Motion for Attorney's Fees, ECF No. [26]. Therein, the Defendants move for an award of attorney's fees pursuant to 28 U.S.C. § 1927, which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to

satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."  Alternatively, the Defendants seek an award of sanctions pursuant to the Court's inherent power to levy sanctions for abuse of the judicial system, ECF No. [26] at 3-4. The Defendants contend that Mr. Palma committed sanctionable conduct by (1) conducting a deficient intake interview such that he failed to determine that the Plaintiff had no claim for overtime wages against Defendants; and (2) opposing the Motion to Dismiss filed by the Defendants even though the Plaintiff wanted the action dismissed.

On October 2, 2017, Mr. Palma filed a Response to Defendants' Motion for Attorney's Fees and Counter-Motion for Attorney Fees and Sanctions, ECF No. [31]. Therein, Mr. Palma contends that the Defendants' Motion for Attorney's Fees is baseless, and that the Defendants and their counsel are subject to sanctions (1) pursuant to 28 U.S.C. § 1927 for multiplying the proceedings by filing their Motion for Attorney's Fees, and (2) pursuant to the Court's inherent powers for their "intentional and unscrupulous effort to subvert the legal process," which effort was demonstrated by the Defendants' "attempts to pressure Plaintiff into dismissing his lawsuit, tampering with a material witness (Plaintiff Nolasco); and attempting to commit fraud upon the Court by coercing Plaintiff into signing false documents in order to have this matter dismissed," ECF No. [31] at 22-23.

## II.    HEARING ON THE CROSS MOTIONS FOR ATTORNEY'S FEES

On February 28, 2018, the parties appeared before the undersigned for an evidentiary hearing on the pending Motions.  The parties were unable to conclude in the time allotted, and the hearing was continued on March 28, 2017.

At the hearing, both sides presented testimony regarding the initiation of the lawsuit and the communications between the individuals involved.  The following is a summary of the testimony of each of the witnesses.

4

A.    <u>Testimony of Mirnesa Hasanovic</u>

Mirnesa Hasanovic, president of Defendant Complete Highway Identity, testified that she hired the Plaintiff in August 2016 and that he was employed by CHI though February of 2017.  According to Ms. Hasanovic, the Plaintiff quit his job at CHI in March of 2017 because his fiancé and small children had recently moved to the Miami, Florida area and his child care responsibilities prevented him arriving at the CHI worksite on time.  The Plaintiff was then rehired and employed from June 2017 to November 2017.

Ms. Hasanovic testified that the Plaintiff was provided with a brand new work-issued cell phone over the 2016 holidays.  When the Plaintiff quit his job with CHI for the first time, on March 16, 2017, he returned the phone with a shattered screen.  Plaintiff and Ms. Hasanovic exchanged text messages in which Ms. Hasanovic threatened to withhold payment of the Plaintiff's final paycheck as a result of the damaged cell phone, but the paycheck was not withheld and the full amount was paid timely.  Payroll records submitted by the Defendants show that the Plaintiff's last paycheck during his first term of employment with CHI had a checkdate of March 24, 2017.  Defendant's Exhibit 5.  Ms. Hasanovic testified that the CHI work week starts on a Saturday and ends on a Friday and check dates correspond to the Friday following the work week in which compensation was earned. Based on Ms. Hasanovic's explanation of the payroll procedures, after quitting on March 16, 2017, the Plaintiff's last checkdate would be March 24, 2017.  Text messages exchanged between Ms. Hasanovic and the Plaintiff, however, show that as of March 30, 2017, the Plaintiff believed that his paycheck was being withheld.  Defendant's Exhibit 3.

Shortly thereafter, Ms. Hasanovic learned that the Plaintiff had filed suit against her and CHI.  Upon learning about the lawsuit, Ms. Hasanovic asked her fiancé, Steve Holguin, to contact the Plaintiff's father, Wilson Nolasco, Sr., to obtain more information. Mr.  Nolasco, Sr. was unaware of the lawsuit when Mr. Holguin initially called and had to

contact the Plaintiff for information.  Ms. Hasanovic indicated that she and her fiancé contacted Mr. Nolasco, Sr. on multiple occasions, and that the letter and affidavit signed by the Plaintiff were prepared and submitted with input from Ms. Hasanovic and her fiancé.   Specifically, Ms. Hasanovic testified that she provided a form affidavit to the Plaintiff who then wrote out the information in Paragraph 2 of the Affidavit himself.  Ms. Hasanovic initially testified that she spoke with the Plaintiff on May 22, 2017, after he spoke with the Palma Law Firm, but later clarified that she did not speak to the Plaintiff directly, but rather overheard a conversation on speakerphone between her fiancé and Mr. Nolasco, Sr. in which Mr. Nolasco, Sr. recounted the conversation he and his son had with the Palma Law Firm.  Ms. Hasanovic further testified that she saw Mr. Nolasco, Sr. on a virtually daily basis, as he is employed at her former residence and the location where she currently keeps her yacht, and that she had spoken with him regarding the lawsuit.

The Plaintiff was rehired by CHI in June 2017 and remained employed through October 2017, at which time he quit in order to move back to New York.

     B.    <u>Testimony of Plaintiff Wilson Nolasco, Jr.</u>

The Plaintiff testified that he worked for CHI for two distinct periods of time; first, from July 2016 until March 2017, and again, from June 2017 to approximately November 2017.  The Plaintiff terminated his employment relationship with CHI for the first time in March 2017, as a result of personal family issues. After that initial termination, the Plaintiff returned a cell phone that he had been issued by the company in December 2016, with a cracked screen.  Defendant Hasanovic contacted the Plaintiff and indicated that his final paycheck would be withheld if he did not pay for or fix the broken phone. As a result of the Defendants' demand for payment for the phone, the Plaintiff contacted the Palma Law Firm; he could not recall with whom he spoke there.

Although the Plaintiff could not recall with whom he spoke at the Palma Law Firm, he testified that during the call he indicated that he sought his withheld paycheck; he never stated he wanted to pursue wage-related claims beyond the final paycheck.  The Plaintiff testified that it is possible that he also provided information regarding his working hours, pay rate, lunch breaks, and schedule.  He provided information regarding the clock-in procedures at CHI and indicated that he sometimes had to show up for work at 6:20 a.m.  Plaintiff testified, however, that he did not tell the Palma Law Firm that he was not paid for working through lunch breaks or that he was not paid for working on select Sundays.  Subsequently, the Plaintiff signed and returned to the Palma Law Firm a Contingency Agreement for Fair Labor Standards Act Cases and a Consent Form providing consent to join a collective action pursuant to the Fair Labor Standards Act.  Defendant's Exhibit 6.  The Plaintiff testified that he did not read any of the documents before signing them.

On May 22, 2017, the Plaintiff learned that this lawsuit had been filed. He was informed of this by Mr. Nolasco, Sr. who had received a call from Mr. Holguin about the lawsuit.  At that time, the Plaintiff had already received his final paycheck.  He testified that he did not receive the check on time, but that he did receive it approximately three weeks after he returned the phone to CHI.  He indicated that his paychecks were generally direct deposited into an account in his own name, not his father's account.  Mr. Nolasco, Sr. told the Plaintiff that what he had done was wrong, specifically, filing a civil lawsuit over a $500.00 check, and that he needed to stop the lawsuit.

That same day, the Plaintiff called the Palma Law Firm in the presence of his father using the speakerphone feature.  He indicated that he had received his final paycheck and that he did not want to continue the lawsuit. In response, the individual on the phone informed Mr. Palma that the judge would not allow him to drop the lawsuit and would come after him.  In the Affidavit, the Plaintiff stated that the Palma Law Firm told

him "that we can all make a little money on this case." Defendant's Exhibit 2.  Mr. Nolasco, Sr. also spoke on the call, but the conversation devolved and Mr. Nolasco, Sr. hung up on the Palma Law Firm.

Also on May 22, 2017, the Plaintiff drafted and signed the Letter using his father's computer.  The Plaintiff provided the signed Letter to his father, who provided it to the Defendants.

Sometime later, but prior to its execution on June 8, 2017, Mr. Nolasco, Sr. suggested to the Plaintiff that the Plaintiff submit an affidavit.  The Plaintiff intended that the Affidavit would be part of a motion filed to stop the lawsuit.  The Plaintiff testified that his understanding of legal proceedings was gleaned from watching episodes of Law & Order and that, other than his father, no one directed or assisted with the preparation of the Affidavit. The Affidavit was drafted by the Plaintiff and his father over the phone and was typed by either Mr. Nolasco, Sr. or one of his assistants. The Affidavit includes the correct caption and case number associated with the instant case.  Defendant's Exhibit 2.

Subsequently, in June 2017, the Plaintiff resumed employment with CHI.  The Plaintiff testified that his return to the company was in no way related to or conditioned on his execution of the Affidavit or his cooperation in the lawsuit.

The Plaintiff testified that he blocked the phone number for the Palma Law Firm, as stated in the Affidavit, because they continued to call him to continue the lawsuit. Notably, however, the Plaintiff confirmed that he only spoke with the Palma Law Firm on two occasions, his initial intake call and the May 22, 2017, call with his father.  The Plaintiff never answered any calls from the Palma Law Firm after May 22, 2017. According to the Plaintiff, the Palma Law Firm never sent him correspondence, electronic or otherwise, and never notified him of the mandatory settlement conference.

The Plaintiff's flight from New York to Miami in order to allow him to testify at the hearing was paid for by Ms. Hasanovic.

**C.**   **Testimony of Wilson Nolasco, Senior**

Mr. Nolasco, Sr.'s testimony was both inconsistent and contradictory to testimony provided by Ms. Hasanovic and the Plaintiff.

Mr. Nolasco, Sr. testified that he was acquainted with Ms. Hasanovic because she previously resided at the Epic Hotel, where Mr. Nolasco, Sr. is employed as the Parking Director.  According to Mr. Nolasco, Sr., neither Ms. Hasanovic nor her fiancé contacted him regarding the lawsuit at any time.  This statement directly conflicts with Ms. Hasanovic's testimony that her fiancé had contacted Mr. Nolasco, Sr regarding the lawsuit on various occasions and that she had spoken directly with Mr. Nolasco, Sr. regarding the lawsuit, as well.

On direct examination, Mr. Nolasco, Sr. testified that in March 2017 he noticed that his son's last paycheck had been deposited, because the bank account into which the Plaintiff's paychecks were automatically deposited was Mr. Nolasco, Sr.'s account, and that he notified his son of the deposit one week later.

It was not until approximately two months after he notified his son that the paycheck had been deposited that Mr. Nolasco, Sr. became aware that his son had filed the instant lawsuit.  He could not recall the exact details of how he became aware of the lawsuit, but recalled that he was in his kitchen at the time.  At a later point in time, again in Mr. Nolasco, Sr.'s kitchen, Mr. Nolasco, Sr. asked his son to call his attorney and "cancel" the lawsuit.  The Plaintiff called Mr. Palma's office, on speakerphone so that his father could overhear the conversation.  An individual with the last name "Palma" answered the call, but Mr. Nolasco, Sr. could not recall whether his son spoke with his attorney, Zandro Palma, or with another employee of the Palma Law Firm with the same last name.  The Plaintiff told the individual on the phone that he wanted to stop the

lawsuit because he had been paid.  According to Mr. Nolasco, Sr., the individual responded that they could not stop the lawsuit and that the Court would come after the Plaintiff if he attempted to do so.  The individual then indicated that the Palma Law Firm needed to speak with the Plaintiff, not his father.

After this call, Mr. Nolasco, Sr. continued to tell his son that he needed to make sure the case had been dropped.  To this end, Mr. Nolasco, Sr. prepared the Letter on his computer for his son to sign.  According to Mr. Nolasco, Sr., he received no guidance or encouragement to draft the Letter, and told his son he needed to write the Letter "to do what is right." Mr. Nolasco, Sr. explained that his son is very impulsive and does things out of anger, but that he understood that he had done wrong by filing the lawsuit.   After the Letter was ineffective at bringing an end to the litigation, Mr. Nolasco, Sr. instructed his son that he needed to submit an affidavit stating his desire to stop the lawsuit. Mr. Nolasco, Sr. did not prepare or assist with preparation of the Affidavit; he believes that his son had some of the information, including the relevant case number and caption, necessary to prepare the Affidavit.  After it had been prepared, Mr. Nolasco, Sr. accompanied his son to the office where the Affidavit was notarized.

Notably, on cross-examination, Mr. Nolasco, Sr.'s testimony regarding when he learned of the lawsuit was inconsistent with his earlier statements.  He testified that his son had informed him of the lawsuit approximately a week prior to the time the last paycheck was deposited in Mr. Nolasco, Sr.'s account, in approximately March 2017.

D.      Testimony of Jaime Palma

Jaime Palma ("J. Palma," to differentiate from Plaintiff's former counsel, Mr. Palma) is and has been employed by the Law Offices of Zandro Palma for over ten years. J. Palma first had contact with the Plaintiff on or around March 27, 2017, when the Plaintiff called the Palma Law Firm and said his employer owed him unpaid wages from his last paycheck.  J. Palma took the Plaintiff's information over the phone and

completed an intake form.  The completed intake form, admitted as Plaintiff's Exhibit 8, includes information regarding the Plaintiff's situation at work, hours, rate of pay, and summary of days worked, which information J. Palma testified was provided by the Plaintiff during the call.  During that call, J. Palma also explained the contents of the Contingency Agreement for Representation in Fair Labor Standards Cases, which states that Mr. Palma's representation of the Plaintiff related to an FLSA unpaid wage claim. The Plaintiff electronically signed the Representation Agreement and returned it to the Palma Law Firm.

In addition to the Plaintiff, J. Palma also spoke with the Plaintiff's wife twice regarding the Plaintiff's submissions of pay stubs to the Palma Law Firm to support his case.  Prior to the filing of the lawsuit, the Plaintiff followed-up two or three times during the month of April because he was upset the lawsuit hadn't yet been filed.

J. Palma testified that he received a call from the Plaintiff on May 22, 2017, during which the Plaintiff stated that the Defendant had paid him his last check.  J. Palma was not aware of any person other than the Plaintiff on the line or listening through speaker phone and did not speak with anyone other than the Plaintiff during that call. After the Plaintiff relayed that that he had received his final check, J. Palma asked the amount of the check and then confirmed that the check received did not include payment for any unpaid overtime.  The Plaintiff agreed that he had still not received the alleged unpaid overtime payment.  The Plaintiff indicated that the lawsuit should go forward.

J. Palma testified regarding the Palma Law Firm's procedures for clients who are no longer interested in pursuing their claims.  If the Plaintiff had indicated that he did not want to continue his lawsuit, J. Palma would have spoken with Mr. Palma to let him know that the Plaintiff did not want to proceed and to discuss disengagement procedures. That process was never commenced for the Plaintiff because the Plaintiff never stated to

11

J. Palma that he had been paid in full, that he no longer wanted to be represented by the Palma Law Firm, or that the lawsuit should be dropped.

On or around May 24, 2017, Defendant Mirnesa Hasanovic called the Palma Law Firm and asked for Mr. Palma.  He was not available at the time and J. Palma tried to provide assistance.  J. Palma did not represent to Ms. Hasanovic that he was an attorney. Ms. Hasanovic was pleasant on the call, with the exception of stating that the Plaintiff was a drug addict and had mental problems, and indicated that she would provide the Palma Law Firm with proof that the Plaintiff had been fully paid, in the form of a letter and payroll records.  Ms. Hasanovic sent a follow-up email shortly thereafter that attached the Letter from the Plaintiff indicating that he had been paid in full and would contact his attorney to stop the lawsuit.  Upon receipt of the Letter, J. Palma immediately notified Mr. Palma of its contents and Mr. Palma indicated that he should call the Plaintiff immediately to confirm whether it was authentic. The Plaintiff never answered or responded to the Palma Law Firm's various attempts to contact him.

When Ms. Hasanovic called the Palma Law Firm a second time that same day, she "was a little belligerent."  Ms. Hasanovic threatened to sue J. Palma, Mr. Palma, and the Palma Law Firm and to report them to the Florida Bar.

J. Palma also testified that, during his time with the firm, the Palma Law Firm has received fraudulent letters, agreements, and declarations purporting to settle ongoing lawsuits.

     E.    <u>Testimony of Sabrina Velez</u>

Sabrina Velez has been employed as a legal assistant at the Palma Law Firm since 2012.  Ms. Velez is responsible for opening and closing files, answering the telephone, and obtaining information from the client. As part of her responsibility to close files, Ms. Velez is responsible for sending out disengagement letters when necessary.  No disengagement procedure was ever commenced for the Plaintiff because he did not

communicate to the Palma Law Firm that he wanted to disengage. During Ms. Velez's time with the Palma Law Firm, the firm has received documents related to the settlement or dismissal of matters purportedly signed by their client that were ultimately determined to be fraudulent.

Ms. Velez sent multiple e-mail and text message communications to the Plaintiff requesting he contact the Palma Law Firm and informing him of the settlement conference and other deadlines in his case between June and August 2017. The Plaintiff did not respond to any of Ms. Velez's communications.

F.   Testimony of Ana Palma

Ana Palma is Mr. Palma's mother and has been employed by the Palma Law Firm since 2007. Ms. Palma is responsible for gathering information from clients, verifying the information provided, and preparing a rough draft of the complaint. Ms. Palma prepared a draft complaint for the Plaintiff. In the course of preparing the complaint, in approximately early May 2017, Ms. Palma spoke with the Plaintiff to verify the information he had provided during the initial intake call. During that conversation, the Plaintiff confirmed that he worked 40 minutes of off-the-clock hours six days a week and that he often wasn't able to take his lunch break but it was automatically deducted from his pay regardless of whether a lunch break was taken or not. The Plaintiff was aware that the Palma Law Firm was filing a claim for unpaid wages under the Fair Labor Standards Act and cooperated fully with the preparation of the Complaint. The Plaintiff never indicated that he wanted the Palma Law Firm to drop his case nor indicated that he no longer wanted to proceed on his claims. During the time Ms. Palma has been working for the Palma Law Firm, it has received similar letters or statements purporting to settle or dismiss lawsuits that have ultimately been determined to be fraudulent.

III.    **FINDINGS OF FACT**

For the reasons stated in more detail in the analysis set forth below, and based on the demeanor of the testifying witnesses, the undersigned credits the testimony of the employees of the Palma Law Firm regarding the events surrounding this litigation.  They answered the questions directly, and were not evasive.  Their testimony was consistent and supported by contemporaneous documentation.  The testimony of the defense witnesses, on the other hand, was inconsistent and illogical.  For example, the testimony of the Plaintiff that he blocked calls from Mr. Palma's office because he did not want to be repeatedly harassed does not explain why he never responded at all to their calls or directly advised the firm that he did not want to pursue this case.  The Plaintiff and his father contradicted each other concerning the events involving the filing of the lawsuit and Plaintiff's actions in seeking to terminate the lawsuit.  The Plaintiff did not answer questions directly, and appeared evasive.

Therefore, the undersigned makes the following findings of fact:

1.      The Plaintiff contacted the Palma Law Firm for the purpose of filing a lawsuit when he did not timely receive his final paycheck.

2.      During the course of the initial conversation regarding his employment, the Plaintiff advised J. Palma that he had not been paid for all the hours he worked, and that he wanted the lawsuit to be filed to recover his back wages.

3.      The Plaintiff was furnished and signed documentation to confirm his desire to pursue his claim under the FLSA.

4.      Thereafter, the Plaintiff called the Palma Law Firm to find out why the lawsuit had not yet been filed.

5.      Ana Palma called the Plaintiff to confirm the details of the Plaintiff's claim before the lawsuit was filed.

6.      The Palma Law Firm conducted an adequate pre-suit investigation of the facts before filing the lawsuit on behalf of the Plaintiff.

7.      The Plaintiff called the Palma Law Firm on May 22, 2017, and advised J. Palma that he had received his last paycheck.  The undersigned credits the testimony of J. Palma, over the contrary testimony of the Nolasco's, and finds that the Plaintiff advised the Palma Law Firm that he nevertheless wanted the lawsuit to go forward regarding his overtime claims.

8.      After the lawsuit was filed, Defendant Hasanovic's fiancé contacted the Plaintiff's father, and as a result, the Plaintiff's father convinced his son to terminate the lawsuit by first writing a letter, and later, signing an affidavit, that contradicted the information the Plaintiff had provided to the Palma Law Firm.

9.      Defendant Hasanovic called the Palma Law Firm to advise them that the Plaintiff had been properly paid, and shortly thereafter provided the Letter to the Palma Law Firm by email.  After receipt of this information, the Palma Law Firm attempted to contact the Plaintiff to determine if he had been coerced into signing the Letter and whether he wanted to commence disengagement procedures and end his relationship with the Palma Law Firm.  The Palma Law Firm had no knowledge of the Affidavit until it was filed by the Defendants with their Motion to Dismiss.  Their efforts to contact the Plaintiff continued after the Affidavit was filed.  The Plaintiff blocked calls from the Palma Law Firm and failed to respond to their communications at any time.

10.     The Palma Law Firm sent notification to the Plaintiff regarding the Court-ordered settlement conference, but did not receive any communication from the Plaintiff in response.

11.     The Plaintiff did not attend the settlement conference on August 16, 2017. *See* ECF No. [21], Docket Entry Order Regarding Settlement Conference.

IV.     **ANALYSIS**

    a. **Applicable Standards**

The parties seek sanctions against one another pursuant to 28 U.S.C. § 1927, which provides that: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[1]

As the Eleventh Circuit has explained, the statutory language itself "makes clear that this section is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). In *Millon Air*, the appellate court also outlined the basic rules governing motions under Section 1927:

    a)    To justify an award, the attorney must engage in unreasonable and vexatious conduct.

    b)    The conduct must multiply the proceedings.

    c)    Something more than a lack of merit is required.

    d)    The statute was designed to sanction attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith."

    e)    Bad faith is the "touchstone" because the statute is "not about mere negligence."

    f)    A determination of bad faith is warranted when an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims.

An attorney engages in unreasonable and vexatious conduct when the conduct is "so egregious that it is tantamount to bad faith." *Norelus v. Denny's, Inc.,* 628 F.3d 1270, 1282 (11th Cir. 2010) (quoting *Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1239

---

[1] **The Eleventh Circuit has not directly addressed the issue of whether Section 1927 authorizes sanctions against law firms, but other appellate courts who have reached the issue have concluded that the statute does not provide for such relief.** *BDT Prods., Inc. v. Lexmark Int'l, Inc.***,** 602 F.3d 742, 750–752 (6th Cir.2010); *Claiborne v. Wisdom,* 414 F.3d 715, 722–724 (7th Cir. 2005). **Because the court finds no bad faith on the part of Mr. Palma or his Law Firm, the issue of whether Section 1927 sanctions are available against a law firm need not be addressed herein.**

(11th Cir. 2007)) (internal quotation marks omitted). An attorney acts in bad faith when he "knowingly or recklessly pursues a frivolous claim." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Negligent conduct is not enough. *Amlong*, 500 F.3d at 1241–42. "Determinations regarding frivolity are to be made on a case-by-case basis." *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir. 1985). A case may be weak, but as long as it is not "without circumstantial foundation," it is not frivolous. *Hudson v. Int'l Computer Negotiations, Inc.*, 499 F.3d 1252, 1265 (11th Cir. 2007) (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1187 (11th Cir. 2005)). When deciding if a claim is frivolous, we ask "whether th[e] evidence was so obviously deficient that [the party] and her counsel should be forced to pay ... attorney's fees and expenses." *Cordoba*, 419 F.3d at 1180.

If egregious enough, pursuing a claim "without reasonable inquiry into the underlying facts" can constitute the bad faith necessary to support a fees sanction. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (affirming fees award against plaintiffs' counsel under court's inherent powers for bad faith pursuit of allegedly frivolous employment discrimination claim). *See also Dent v. Giaimo, D.O., P.A.*, 665 F. Supp. 2d 1295, 1305 (S.D. Fla. 2009) (awarding sanctions against plaintiff's counsel in FLSA case for not making adequate inquiry into facts before filing the lawsuit because "such inaction is tantamount to bad faith"); *Ortiz v. D & W Foods, Inc.*, 657 F. Supp. 2d 1328, 1330–31 (S.D. Fla. 2009) (awarding fees against Plaintiff's counsel in FLSA case and noting that the pre-suit investigation did not concern the $500,000.00 gross revenue threshold issue).

Sanctions can also be issued pursuant to the court's inherent powers. Under its inherent powers, a court can sanction an attorney and the attorney's law firm for bad faith litigation conduct. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–51 (1991); see also *In re Mroz*, 65 F.3d 1567, 1576 (11th Cir. 1995) ("there is nothing preventing a federal

17

court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith"); *Herard v. ATN Rest., Inc.*, No. 07–60269–CIV, 2008 WL 123596 (S.D. Fla. Jan. 8, 2008) (awarding fees against plaintiff's law firm in FLSA case under inherent power doctrine).  The Supreme Court has held that sanctions in the form of attorney's fees are within a court's inherent power when a party's conduct evidences bad faith and an attempt to perpetrate a fraud on the court. *See Chambers,* 501 U.S. at 40–46, 51; (affirming an award of $996,644.65 in attorney's fees).  The Eleventh Circuit has explained that "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Allapattah Servs., Inc. v. Exxon Corp.,* 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (striking defendant's affirmative defenses pursuant to the court's inherent powers) (citing *Byrne v. Nezhat,* 261 F.3d 1075, 1106 (11th Cir. 2001) (sanctioning attorney who filed a frivolous lawsuit in bad faith for the purpose of extorting a settlement)). "Bad faith exists when the court finds that a fraud has been practiced upon it, or 'that the very temple of justice has been defiled,' or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." *Allapattah,* 372 F. Supp. 2d at 1373 (citing *Chambers,* 501 U.S. at 46; *Malautea v. Suzuki Motor Co. Ltd.,* 987 F.2d 1536, 1545–46 (11th Cir. 1993)).  The bad faith conduct must be proven  by clear and convincing evidence. *See Barash v. Kates,* 585 F. Supp. 2d 1347, 1365 (S.D. Fla. 2006) (holding the movant to a clear and convincing evidence standard of proof of conduct that warrants attorneys' fees as sanctions pursuant to the court's inherent power).

Thus, regardless of whether the parties seek fees pursuant to Section 1927 or the Court's inherent powers, a finding of bad faith is required to support such award.  There is no meaningful distinction between the bad faith required to support a fee award under Section 1927 and the court's inherent powers.  *U.S. ex rel. Bumbury v. Med-Care Diabetic & Med. Supplies, Inc.*, 102 F. Supp. 3d 1350, 1353 (S.D. Fla. 2015) ("In practice, 'the only

meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'").

**b. Defendant's Motion for Attorney's Fees and Costs Pursuant to 28 U.S.C. § 1927**

The Defendants argue that the court should impose the payment of their fees and costs as a sanction against Mr. Palma for (1) failing to conduct sufficient pre-suit investigation, which if properly conducted would have revealed that the Plaintiff had no overtime claim against the Defendants; and (2) opposing the Motion to Dismiss, forcing the Defendants to draft a Reply brief and incur additional fees. ECF No. [26] at 4-5.

The Defendant's argument related to pre-suit investigation fails because relief under 28 U.S.C. § 1927 is not available in connection with a deficient pre-suit investigation or the filing of an initial pleading. "[T]he language of § 1927 makes clear that it only applies to unnecessary filings after the lawsuit has begun." *Macort v. Prem, Inc.*, 208 F. App'x 781, 786 (11th Cir. 2006) citing 28 U.S.C. § 1927. *See also Matter of Yagman,* 796 F.2d 1165, 1187 (9th Cir. 1986) ("Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings. It is only possible to multiply or prolong proceedings after the complaint is filed."). "The filing of a complaint may be sanctioned pursuant to Rule 11 or a court's inherent power, but it may not be sanctioned pursuant to § 1927." *In re Keegan Mgmt. Co., Sec. Litig.,* 78 F.3d 431, 435 (9th Cir.1996).

In any event, the Palma Law Firm conducted a sufficient pre-suit investigation and had no reason to doubt the veracity of the information provided to them by the Plaintiff at the time the Complaint was filed. The contemporaneously created intake document and the credible testimony of Ana Palma support this finding. The intake document, dated

March 27, 2017, includes information on the hours Plaintiff worked for the Defendant and states that the Plaintiff worked from 6:20 a.m. to 5:20 p.m., but did not clock in until 7:00 a.m.  It additionally notes that the Plaintiff worked "Monday-Saturday, but has worked Sundays 4 times during his entire job," that the Plaintiff was required to clock-in using his fingerprint, and that an hour was deducted from the Plaintiff's pay for lunch everyday, but that he was not able to actually take his lunch 3 times per week."  At the evidentiary hearing, the Plaintiff confirmed that during his intake call he had provided the Palma Law Firm with information regarding his working hours, that he sometimes had to arrive at work at 6:20, and the clock-in procedures at CHI.  Although the Plaintiff denied that he had indicated that he was required to work through lunch and not compensated, the testimony of the Plaintiff and Ms. Hasanovic regarding how lunch breaks were compensated was inconsistent and could not be credited.[2]  Ms. Palma, on the other hand, provided credible testimony that she verified the information provided by the Plaintiff during his initial intake call in the course of preparing a draft complaint and that the Plaintiff confirmed the off-the-clock time and the uncompensated time for missing lunch breaks.  Thus, this court finds that Mr. Palma's pre-suit investigation was sufficient.

The Defendant's argument related to the Response to the Motion to Dismiss filed by the Plaintiff also fails.[3]  As an initial matter, the Response did not mislead the Court

---

[2] Ms. Hasanovic testified that the Plaintiff had never foregone lunch and that there would never be any reason to do so, while the Plaintiff testified that he did skip lunch on occasion and would simply notify Ms. Hasanovic so that he would be compensated for it.

[3] As an aside, Defense counsel's argument regarding the multiplication of the proceedings is also undermined by the fact that Defense counsel did not take any steps to communicate directly with Mr. Palma.  That Mr. Palma first saw the Letter of May 22, 2017, and the Plaintiff's affidavit upon the filing of the Defendant's Motion to Dismiss suggests to the undersigned that Defense counsel made no attempt to reasonably confer with Mr. Palma prior to its filing. While the Local Rules do not require the parties to confer prior to the filing of a motion to dismiss for failure to state a cause of action, if the Defendants truly wanted to resolve this matter without further multiplication of the

and merely sought to comply with the requirements of the FLSA, designed to protect employees from coercion by their employers. The Response to the Motion to Dismiss filed by Mr. Palma alerts the Court that "[t]he Plaintiff in this matter, Wilson A. Nolasco, without involvement of his counsel and contrary to the undersigned's legal advice, has purportedly agreed to settle this matter with the Defendants directly" and requests the Court to conduct a fairness hearing.  ECF No. [13] at 1.  In his Response to the Defendants' Motion for Attorney Fee's, Mr. Palma argues that to have filed a Notice of Non-Objection in response to the Defendants' Motion to Dismiss would have been "a clear circumvention of the mandates of the FLSA and a clear violation of this Court's Orders," because "Federal Courts have strict guidelines and procedures involving dismissal of said actions." ECF No. [31] at 16-17.

The typical procedures for voluntary dismissal of an action are not generally available in an FLSA lawsuit.  "The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours.  Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees."  *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dep't of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1352 (11th Cir. 1982) (internal citations omitted).  In *Lynn's Food Stores*, the Eleventh Circuit reviewed the procedures for settlement of claims arising under the FLSA, which are more limited than in other contexts.   Claims arising under the FLSA can be settled by the employee in only two ways: (1) by the employee's acceptance of a payment supervised by the Secretary of Labor; or (2) by entry of a stipulated judgment by a district court upon review of the parties' proposed settlement and a

proceedings, one would expect them to have presented those documents to Mr. Palma prior to filing them.

determination that the settlement reached is fair. *Lynn's*, 679 F.2d at 1352-1353.[4]  While this court need not address the issue of whether Mr. Palma's filing of a Notice of Non-Objection would have circumvented the mandates of the FLSA, it does credit his assertion that he believed a dismissal without review of the settlement for fairness purposes would have been improper. ECF No. [31] at 15-18.

Given the known inequalities in bargaining power that arise in FLSA lawsuits, the insistence by Mr. Palma on receiving confirmation directly from his client that he did not wish to proceed with his claims was both logical and prudent.  Moreover, Mr. Palma's employees testified that the firm has previously received fraudulent documents purporting to settle their client's claims, further validating their insistence on direct confirmation from their client.  When it became obvious that his client would not communicate with him, perhaps the better route would have been for the Palma Law Firm to file a motion to withdraw, providing the Court with contact information for the Plaintiff, so the Court could enter appropriate orders directed to the Plaintiff.

It cannot be said, however, that Mr. Palma's decision to continue litigating Plaintiff's claims, in the face of what the Palma Law Firm perceived as coercion and bullying by the Defendants, was unreasonable or vexatious.  Nor did Mr. Palma engage in "objectively reckless conduct" or "manifest either intentional or reckless disregard of the attorney's duties to the court," so as to support a finding of bad faith. *Wandner v.*

---

[4] **The need for this limitation on the parties' ability to settle their dispute without court involvement is demonstrated by the facts before the Eleventh Circuit in *Lynn's Food Stores*.  Therein, the Department of Labor, after an official investigation, concluded that Lynn's Food Stores ("LFS") had violated provisions of the FLSA and was liable to its employees for back wages and liquidated damages.  LFS attempted to negotiate a settlement with the Department of Labor, and when those negotiations were unsuccessful began negotiating directly with its employees to resolve the claims.  LFS offered its employees $1,000.00, to be divided among them on a pro rata basis, in settlement of the back wage claims that the Department of Labor had calculated exceeded $10,000.00.  Fourteen employees of LFS accepted LFS's settlement terms.**

*American Airlines*, 79 F. Supp. 3d 1285, 1299 (S.D. Fla. 2015); *Braley v. Campbell*, 832

F.2d 1504, 1512 (10th Cir. 1987).  Therefore, the Defendants' Motion must be denied.

        **c.**   <u>Plaintiff's Motion for Attorney's Fees and Costs pursuant to Section 1927
and/or the Court's Inherent Powers</u>

      Mr. Palma argues that Defendants and their counsel should be sanctioned and

required to pay his fees and costs (1) pursuant to 28 U.S.C. § 1927 based on the filing of

their Motion for Fees and Costs and (2) pursuant to the court's inherent powers for

litigation misconduct. ECF No. [31] at 21-24.  Specifically, Mr. Palma argues that the

Defendants should be sanctioned for their litigation misconduct in "attempt[ing] to

pressure Plaintiff into dismissing his lawsuit; tampering with a material witness (the

Plaintiff); and attempting to commit fraud upon the Court by coercing Plaintiff into

signing false documents in order to have this matter dismissed." ECF No. [31] at 22.

      At the outset, the Defendants did not "unreasonably and vexatiously multiply the

proceedings" by filing its Motion for Attorney's Fees, as permitted by the District Court's

Order Dismissing Case.  *See* ECF No. [25] ("Defendant may file a motion for fees and

costs within 14 days of this Order.").  The Defendant's Motion fails to demonstrate the

recklessness, bad faith, or improper motive required for a finding that the attorney has

multiplied the proceedings "unreasonably and vexatiously." Therefore, Mr. Palma's

motion for fees on the basis of 28 U.S.C. § 1927 is denied.

      As regards Mr. Palma's argument that he is entitled to his fees and costs on the

basis of litigation misconduct pursuant to the Court's inherent powers, Mr. Palma has

not met his burden to demonstrate bad faith on the part of the Defendants, or that any

litigation misconduct occurred.  While the conflicting testimony provided by Ms.

Hasanovic, the Plaintiff, and Mr. Nolasco, Sr. suggests a lack of candidness with the

Court that gives the undersigned reason to wonder what is being concealed, the Court is

unable to find that the Defendants engaged in the conduct alleged by Mr. Palma based on the evidence presented.

Neither the Plaintiff nor Mr. Nolasco, Sr. provided credible testimony regarding the events surrounding the lawsuit.  The testimony of Ms. Hasanovic, though generally internally consistent, conflicts with the accounts provided by the Plaintiff and Mr. Nolasco, Sr. in a number of ways.

For example, the Plaintiff testified that his paycheck was withheld for a period of time, was received some three weeks after he returned the phone but before the lawsuit was filed, and was deposited into his own account.  This testimony conflicts with that of Ms. Hasanovic that the paycheck was not withheld, and with that of Mr. Nolasco, Sr. that his son's paychecks were deposited into his account and that the final paycheck was received timely.  Additionally, Mr. Nolasco, Sr. testified that he was never contacted by Ms. Hasanovic or her fiancé, Mr. Holguin, regarding the lawsuit, while both Ms. Hasanovic and the Plaintiff testified that Mr. Holguin had called Mr. Nolasco, Sr. regarding the lawsuit.  Ms. Hasanovic also testified that she spoke with Mr. Nolasco, Sr. regarding the lawsuit directly.

There is also confusion surrounding the preparation of the Affidavit.  Mr. Nolasco, Sr. testified that he was not involved in any way in the preparation of the affidavit and that he believed his son had obtained the relevant case number and caption in order to prepare that document.  The Plaintiff testified that he and his father collaborated over the phone to prepare the Affidavit, and that it was typed by either his father or one of his father's assistants, with no outside assistance or input.  Ms. Hasanovic, on the other hand, testified that she supplied a blank form to the Plaintiff for him to complete.  It is worrisome for the court why there would be any need for the Nolasco's and the Defendants to be less than truthful regarding the preparation of the Affidavit.

The Court will not belabor the inconsistencies in the testimony of the Defendants' witnesses; those noted above go to central issues within this dispute.  While the court is mindful of these inconsistencies and the suggestion of misconduct they create, there is no evidence that the documents were fraudulent in any way or that the Defendants or their counsel engaged in any specific misconduct.  The Plaintiff has testified that he either directed their preparation or prepared them himself, and the inconsistencies in his testimony and the testimony of the Defendants' other witnesses does not establish fraud. Mr. Palma may be correct that there was an ethically-questionable campaign to have this matter dismissed, but the evidence presented falls far short of actually proving that. Therefore, Mr. Palma's Motion must be denied.

V.    **CONCLUSION**

Accordingly, based on the testimony and evidence produced at the evidentiary hearing, the foregoing analysis, and the record as a whole, it is hereby

RECOMMENDED that Defendants' Motion for Attorney's Fees, ECF No. [26] is DENIED.  It is further

RECOMMENDED that Plaintiff's Counter-Motion for Attorney's Fees, ECF No. [32] is DENIED.

The parties will have fourteen calendar days from the date of this Report and Recommendation within which to file written objections for consideration by the United States District Judge to whom this case is assigned.  Any response to objections must be filed within seven days from the date any objections are filed.  Any request for an extension of these deadlines must be made within seven calendar days from the date of this Report and Recommendation.  Pursuant to Eleventh Circuit Rule 3-1, and accompanying Internal Operating Procedure 3, the parties are hereby notified that failure

to object in accordance with 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal

the district court's order based on unobjected-to factual and legal conclusions.

     **DONE AND SUBMITTED** in chambers in Miami, Florida on August 9, 2018.


*Andrea M. Simonton*
_____
**ANDREA M. SIMONTON**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


**Copies furnished via CM/ECF to:**
**The Honorable K. Michael Moore, Chief United States District Judge**
**All counsel of record**